

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

September 6, 2016

The Honorable Jim Murphy
Chair, Committee on Corrections
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0112

Re: Whether the State is required to assume liability when a local retirement system created pursuant to title 109 of the Texas Civil Statutes is unable to meet its financial obligations (RQ-0101-KP)

Dear Representative Murphy:

You ask whether the State of Texas must assume liability in the event that a specific group of municipal retirement systems created pursuant to title 109 of the Texas Civil Statutes cannot meet its financial obligations.[1] You explain that "[r]ising pension and health care costs, unpredictable revenues, aging infrastructure, high debt load, and increasing costs for the delivery of city services threaten municipalities' ability to balance budgets and maintain strong credit ratings." Request Letter at 1. Citing the potential for municipal default, you ask whether "the oversight role played by the State Legislature in these specific municipal retirement systems cause[s] the State to assume some or all of the liability[.]" Id.

Article XVI, section 67(a) of the Texas Constitution authorizes the Legislature to "enact general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers." TEX. CONST. art. XVI, § 67(a). With regard to municipalities, the constitution requires the Legislature to provide "by law for . . . the creation by any city . . . of a system of benefits for its officers and employees."[2] Id. art. XVI, § 67(c)(1)(A). Pursuant to this authority, the Legislature enacted multiple articles in title 109 of the Texas Civil

---

[1]See Letter and Attachment from Honorable Jim Murphy, Chair, Comm. on Corrections, Tex. House of Representatives, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Mar. 8, 2016), https://www.texasattorneygeneral. gov/opinion/requests-for-opinion-rqs ("Request Letter" & "Attachment" respectively) (Attachment on file with the Op. Comm.).

[2]Article XVI, section 67(c)(1)(C) also requires the Legislature to provide for a statewide system "in which cities may voluntarily participate." TEX. CONST. art. XVI § 67(c)(1)(C). Based on the information you provide, we assume that none of the cities at issue have elected to participate in the statewide system, the Texas Municipal Retirement System ("TMRS"). See generally TEX. GOV'T CODE §§ 851.001–855.608 (subtitle G, establishing TMRS).

Statutes to establish the specific municipal retirement systems you ask about.[3] Through each system's enabling statute, the Legislature provided the governance provisions applicable to each system, including board composition, plan structure, retirement eligibility requirements, benefits, and pension fund contributions. The Legislature also made public retirement systems generally subject to Chapter 802 of the Government Code, which sets forth administrative requirements in subchapter C regarding, among other things, the administration of assets.[4] *See generally* TEX. GOV'T CODE §§ 802.201–.207. In accordance with the constitution and chapter 802, the trustees of the municipal retirement systems at issue must "hold the assets of the system or program for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the system or program." TEX. CONST. art. XVI, § 67(f)(2) (applicable to retirement systems not belonging to a statewide system); TEX. GOV'T CODE § 802.201 (similarly providing that a public retirement system's assets are held in trust "for the benefit of the members and retirees of the system and their beneficiaries").

In addition, the Legislature provided general oversight of municipal retirement systems created pursuant to title 109 through the State Pension Review Board (the "Board"). *See generally* TEX. GOV'T CODE §§ 801.001–.211. The Board must "conduct a continuing review of public retirement systems, compiling and comparing information about benefits, creditable service, financing, and administration of systems," including "intensive studies of potential or existing problems that threaten the actuarial soundness of or inhibit an equitable distribution of benefits." *Id.* § 801.202(1)–(2). The Board recommends "policies, practices, and legislation" and, if requested by a public retirement system, provides "information and technical assistance on pension planning." *Id.* § 801.202(3)–(4). Thus, through title 109 of the Civil Statutes and chapters 801 and 802 of the Government Code, the Legislature provided an overall operating framework for each municipal retirement system about which you ask.

Within this framework, the Legislature specifically addressed the financial health of the municipal retirement systems. For example, the Legislature required the Board to "conduct a study of the financial health of public retirement systems in this state, including each system's ability to meet its long-term obligations." Act of May 13, 2013, 83d Leg., R.S., ch. 140, § 7(b), 2013 Tex. Gen. Laws 566, 568. If at any time an actuarial valuation indicates "that the system's actual contributions are not sufficient to amortize the unfunded actuarial accrued liability within 40 years," a public retirement system must generally notify the associated governmental entity in writing. TEX. GOV'T CODE § 802.2015(c). If the valuation shows that the amortization period

---

[3]You identify the municipal retirement systems specifically enacted by title 109. *See* Attachment at 13–15, 17, 19–21, 23–26, 28–29 (pagination as indicated therein) (identifying Austin Employees' Retirement System, Austin Fire Fighters Relief & Retirement Fund, Austin Police Retirement System, Dallas Police & Fire Pension System, El Paso Firemen Pension Fund, El Paso Police Pension Fund, Fort Worth Employees' Retirement Fund, Galveston Employees' Retirement Plan for Police, Houston Firefighters' Relief & Retirement Fund, Houston Municipal Employees Pension System, Houston Police Officers Pension System, San Antonio Fire & Police Pension Fund, and Texas Local Fire Fighters Retirement Act); *see also* TEX. REV. CIV. STAT. arts. 6243a-1, 6243b, 6243e, 6243e.1, 6243e.2(1), 6243g-4, 6243h, 6243i, 6243n, 6243n-1, 6243o, 6243p.

[4]Subchapter C of chapter 802, Government Code, does not apply to the Texas Local Fire Fighters Retirement Act except for sections 802.202 (Investment of Surplus), 802.205 (Investment Custody Account), and 802.207 (Custody and Use of Funds). TEX. REV. CIV. STAT. art. 6243e, § 28(h).

"has exceeded 40 years" for a certain number of consecutive valuations, the retirement system and the associated governmental entity must generally "formulate a funding soundness restoration plan" meeting certain requirements in accordance with the system's governing statute and report the progress toward improved actuarial soundness to the Board. *Id.* § 802.2015(c), (e), (f).

With regard to specific enabling statutes of the municipal retirement systems at issue, the Legislature in some instances authorized or directed specific action by local entities under certain financial circumstances. *See, e.g.*, TEX. REV. CIV. STAT. art. 6243h, § 21(a), (c) (Houston Municipal Employees Pension System) (authorizing the pension board to temporarily reduce benefits if it "determines that the pension fund is seriously depleted," and authorizing the governing body of the city by ordinance to dissolve and liquidate the pension system "[i]f the reserve and surplus in the pension fund become exhausted and the payouts of the pension fund exceed the income to the pension fund").[5]  In the event that a change by a municipal retirement system results in the reduction of benefits, article XVI, section 66(d)–(e) of the constitution generally protects the benefits of vested employees existing on the date of the change, putting the joint responsibility on "the political subdivision . . . and the retirement system that finance benefits under the retirement system" to ensure that such benefits "are not reduced or otherwise impaired."[6] TEX. CONST. art. XVI, § 66(d)–(f); *see also* Tex. Att'y Gen. Op. No. GA-0615 (2008) at 7 (indicating that the legislative intent of section 66 was to give affected retirement systems the "flexibility . . . to respond to changing economic times" while protecting the benefits of vested employees (quotation marks omitted)).

In no instance does the constitution or the Legislature make the State liable for any shortfalls of a municipal retirement system regarding the system's financial obligations under title 109.  The Texas Constitution would in fact prohibit the State from assuming such liability without express authorization.  Article III, section 49(a) prohibits the creation of State debt except in

---

[5]*See also id.*. arts. 6243e.1, § 9.08 (Austin Fire Fighters Relief and Retirement Fund) (requiring a temporary pro rata reduction of benefits if the fund is insufficient to make regular payments); 6243n-1, § 6.01(d)(4) (Austin Police Retirement System) (giving the board "the authority and the duty" to decrease cost of living adjustments "as much as is necessary" to protect the continuity of the retirement system if "the ability of the system to continue" regular payments is compromised by an "economic situation"); 6243i, § 5.08(a) (Fort Worth Employees' Retirement Fund) (authorizing the city's governing body to amend its administrative rules governing municipal contributions under certain circumstances to address "a fiscal emergency"); 6243o, § 4.06 (making the City of San Antonio responsible for paying "the deficiency, if any" between the amount available to pay benefits and the amount owed by statute).

[6]By its terms, article XVI, section 66 does not apply "to a public retirement system that provides service and disability retirement benefits and death benefits to firefighters and police officers employed by the City of San Antonio" and to a public retirement system and its financing political subdivision if the voters so elect pursuant to section 66(h). TEX. CONST. art. XVI, § 66(b), (h).  You inform us that voters of the following cities opted out of this provision: the City of Galveston (for the Galveston Employees' Retirement Plan for Police); the City of Houston (for the Houston Firefighters' Relief & Retirement Fund, the Houston Municipal Employees Pension System, and the Houston Police Officers Pension System); and the City of San Antonio (for the San Antonio Fire and Police Pension Fund). *See* Attachment at 22–26, 28 (pagination as indicated therein).

limited circumstances not present here.[7]  *See* TEX. CONST. art. III, § 49(a).  A related provision, Article III, section 50, prohibits the State from lending its credit, stating that the Legislature has

> no power to give or to lend . . . the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever.

*Id.* art. III, § 50.  Thus, a court would likely conclude that the State is not required to assume liability when a municipal retirement system created under title 109 is unable to meet its financial obligations.

---

[7]*See* TEX. CONST. art. III, § 49(a) (prohibiting the creation of State debt "except (1) to supply casual deficiencies of revenue, not to exceed in the aggregate at any one time two hundred thousand dollars; (2) to repel invasion, suppress insurrection, or defend the State in war; (3) as otherwise authorized by this constitution; or (4)" as approved by the voters through an election).

## S U M M A R Y

A court would likely conclude that the State is not required to assume liability when a municipal retirement system created under title 109 of the Texas Civil Statutes is unable to meet its financial obligations.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee